IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


LAWRENCE MARVIN WILSON,           :
                                  :
        Plaintiff                 :
                                  :
    v.                            :  CIVIL NO. 3:CV-12-516
                                  :
SECRETARY JOHN WETZEL, ET AL.,    :  (Judge Conaboy)
                                  :
        Defendants                :
_____

# MEMORANDUM
## Background

Lawrence Marvin Wilson, an inmate presently confined at the State Correctional Institution, Coal Township, Pennsylvania (SCI-Coal Twp.), initiated this pro se civil rights action pursuant to 42 U.S.C. § 1983. By Order dated April 9, 2012, Plaintiff's proposed amended prayer for relief (Doc. 9) was accepted.

Presently pending is a motion to dismiss the Complaint filed by Jennifer Daya, P.A. See Doc. 25. The motion has been briefed and is ripe for consideration.

Named as Defendants are Secretary John Wetzel, Regional Superintendent M. Clopotoski, and Chief Grievance Officer Dorina Varner of the Pennsylvania Department of Corrections (DOC). Plaintiff is also proceeding against the following SCI-Coal Twp. Officials: Superintendent David Varano; Deputy Superintendent Ronda Ellett; ex-Deputy Superintendent Robert MacMillan; acting Deputy Superintendent G. Miller; Health Care Administrator Kathryn McCarty; Grievance Coordinator Kandis Discani; Restricted Housing Unit (RHU) Lieutenants N. Folk and G. Burns; Correctional Officer

1

T. Bendas; RHU Captain J. T. Madden; Major Michael Miller and
"Medical Physician" G. Daya.[1]  Doc. 1, ¶ 16.

Plaintiff describes himself as being "a faith believer and
follower of the Hebrew-Israelite Culture/Religion."  Doc. 1, ¶ 26.
He states that he was housed in the SCI-Coal Twp. RHU on September,
2010 during the holy fast day of Gedaliah.[2]  Inmate participants in
the Gedaliah related fasting are provided with a kosher bag meal
during this holy day fast.  Plaintiff initially claims that he
improperly denied his kosher bag meal because he was on a modified
food loaf meal restriction.[3]  There are no assertions raised
against Defendant Daya with respect to this portion of the
Complaint.

The second part of the Complaint asserts that due to the
December 2010 removal of cell light switches from the individual
RHU cells there is 16 hours of bright constant illumination from a
double candle fluorescent light.  In addition, even when that light
is dimmed, a single red dim candle fluorescent light remains on 24
hours a day.  Plaintiff claims that this constant illumination in
the RHU constitutes cruel and unusual punishment and caused him to
develop constant headaches, eye pain, mental stress, and
depression.  See id. at ¶ 55.

---

1. Daya notes that she is a Physicians' Assistant (PA) and not a
medical doctor.  See Doc. 26, p. 1.

2. Plaintiff explains that during Gedliah there is a a sixteen
(16) hour fast from sunrise September 12, 2010 to sundown that same
day.

3. The Complaint indicates that the restriction was imposed
because Wilson failed to return a food tray.

2

With respect to Defendant PA Daya, Wilson states that on July 23, 2011 he filed a sick call request because he was suffering a migraine headache due to the constant RHU illumination. The following day, PA Daya went to Plaintiff's RHU cell. See id. at ¶ 87. According to the Complaint, Daya could not hear Wilson's description of his medical problems due to excessive noise being generated by other RHU prisoners. As a result, Daya left the housing unit without taking any further action.

When Plaintiff filed a request slip regarding Daya's abbreviated visit, HSA McCarty allegedly responded by stating that according to the record, when Daya approached Wilson's cell the inmate was laughing and smiling so no medical emergency was noted. See id. at ¶ 92. It is also asserted that due to the loud boisterous conduct of the RHU inmates that day, the Plaintiff was not singled out by Daya as she also decided not visit a few other prisoners.

Plaintiff then filed an institutional grievance against Daya, the Complaint argues that Deputy Superintendent Miller's response improperly denied the grievance on the basis that Daya concluded that Wilson's complaint of a headache did not constitute a medical emergency and that the inmate could wait to be seen the next day. See id. at ¶ 95. There are no other claims ain the Complaint raised against Defendant Daya.

### Discussion

PA Daya's pending motion argues that she is entitled to entry of dismissal because the Complaint has not set forth facts which could support of deliberate indifference to a serious medical need. See Doc. 26, p. 5.

3

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).

A plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action.  Id. at 556.  A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, ___ U.S. ____ , 129 S.Ct 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Iqbal, 129 S.Ct at 1949.  Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief.  See id. at 1950.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

4

Twombly, at 555. The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action). Additionally, pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972).

**Deliberate Indifference**

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Federal civil rights claims brought under § 1983 cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse

v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235-36 (3d Cir. 2004); Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979).

PA Daya asserts that Plaintiff has not met the serious medical need threshold because "[t]he headache alleged in this case does not rise to the level of a condition that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Doc. 26, p. 5.

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Mines v. Levi, 2009 WL 839011 *7 (E.D. Pa. March 26, 2009)(quoting Colburn, 946 F.2d at 1023); Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347. "[I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." Young v.

Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347).

Plaintiff alleges that prior to his headache of July 23, 2011 he developed other headaches and eye pain. The Complaint further maintains that Wilson passed out in his cell on March 23, 2011 and April 7, 2011. However, there is no claim that Daya was involved in his treatment following those purported incidents or otherwise had knowledge of those events.

Rather, it is only asserted that Plaintiff developed a headache on July 23, 2011 for which he submitted a medical request slip. It is particularly noted that there is no indication in the Complaint as to whether Wilson was still suffering from the headache when PA Daya arrived at his cell the next day. Plaintiff's opposing brief contains a passing assertion that his nagging headache persisted until July 26, 2011. See Doc. 35, ¶ 14. However, the Complaint includes assertions which indicate that when Defendant Daya arrived at Wilson's cell the inmate was laughing and smiling. Accordingly, this Court agrees that it is questionable as to whether Plaintiff's condition on July 24, 2011 satisfies the Estelle serious medical need threshold. See generally Heath v. Shannon, 442 Fed Appx. 712, 716 (3d Cir. 2011)(expert testimony may be required to establish that migraine headaches constitute a serious medical need).

Assuming that Plaintiff did have a serious medical need, Daya alternatively asserts that her alleged conduct does not support a viable claim of deliberate indifference. With respect to the subjective deliberate indifference component, the Supreme Court has established that the proper analysis for deliberate

7

indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994). A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation. See id. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. See id.; Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir. 2008)("deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons.").

There is no claim that Daya had any personal involvement in Plaintiff's care after he allegedly passed out in his cell on both March 23, 2011 and April 7, 2011. Rather, it is alleged only that Daya was deliberately indifferent to Plaintiff's condition the day after he complained of a headache on July 23, 2011.

The Complaint contains no indication that Plaintiff was still suffering from the headache on July 24, 2011. The Complaint also does not maintain that Wilson's condition worsened after Daya

8

left.  It is equally undisputed that Daya went to Plaintiff's cell on said date and personally viewed his condition.  Moreover, there are also assertions in the Complaint indicating that Wilson may have been viewed as laughing and smiling upon Daya's arrival.

There also no contentions that Plaintiff was in fact in need of any further treatment on said date.  The Complaint does not claim that he received or required any type of treatment for his headache after Daya's visit.[4]  In fact, the Complaint indicates that Wilson did not seek any further medical help until approximately three (30 weeks later when he was treated by another member of the prison's medical staff for eye problems (not a headache) on August 16-17, 2011.  Moreover, Plaintiff does not state that he suffered another headache until October 24, 2011, approximately three (3) months later.  See id. at ¶ 123.  Likewise, there is no allegation that Daya's failure to take any immediate action aggravated any preexisting condition.

Pursuant to the standards developed in Estelle and Durmer, and given the circumstances as set forth in the Complaint, the failure of PA Daya to conduct a more thorough evaluation of the Plaintiff's nagging headache because loud boisterous circumstances existing in the RHU impeded her ability to communicate with Inmate Wilson at best sound in negligence, not deliberate indifference. Whooten v. Bussanich, No. 07-1441, slip op. at 4 (3d Cir. Sept. 12,

---

4.  Plaintiff's opposing brief does include a brief assertion that his nagging headache did not subside until July 26, 2011.  Doc. 35, ¶ 14.  Although the Plaintiff contains numerous contentions as to his condition over following months, there is no allegation therein that his headache lasted until July 26, 2011.  Moreover, the opposing brief does not allege that any additional treatment was needed to bring about the end of his headache.

9

2007)(citation omitted).  Thus, entry of dismissal in favor of Defendant Daya with respect to the claim that she acted with deliberate indifference to a serious medical need Plaintiff was experiencing on July 24, 2011 is appropriate.

          S/Richard P. Conaboy
          RICHARD P. CONABOY
          United States District Judge

DATED; FEBRUARY 19, 2013