IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

LAWRENCE MARVIN WILSON,          :
                                 :
          Plaintiff              :
                                 :
     v.                          :     CIVIL NO. 3:CV-12-91
                                 :
SECRETARY JOHN WETZEL, ET AL.,   :     (Judge Conaboy)
                                 :
          Defendants             :

FILED
SCRANTON
SEP 09 2013
PER
DEPUTY CLERK
KM

---

**MEMORANDUM**
**Background**

     This pro se civil rights action pursuant to 42 U.S.C. § 1983
was filed by Lawrence Marvin Wilson, an inmate presently confined
at the State Correctional Institution, Coal Township, Pennsylvania
(SCI-Coal Twp.).  By Memorandum and Order dated February 19, 2013,
a motion to dismiss the Complaint filed by Defendant Jennifer Daya,
P.A. was granted.  See Doc. 53.

     Remaining Defendants are Secretary John Wetzel, Regional
Superintendent Michael Klopotoski, and Chief Grievance Officer
Dorina Varner of the Pennsylvania Department of Corrections (DOC).
Plaintiff is also proceeding against the following SCI-Coal Twp.
Defendants:  Superintendent David Varano; Deputy Superintendent
Ronda Ellett; ex-Deputy Superintendent Robert McMillan; acting
Deputy Superintendent George Miller; Health Care Administrator
Kathryn McCarty; Grievance Coordinator Kandis Dascani; Restricted
Housing Unit (RHU) Lieutenants Norman Folk and George Burns;
Correctional Officer Todd Bendas; RHU Captain Jeffrey Madden; and

1

Major Michael Miller (collectively referred to as the "Corrections Defendants"). <u>See</u> Doc. 1, ¶ 16.

According to the Complaint, Wilson is "a faith believer and follower of the Hebrew-Israelite Culture/Religion." Doc. 1, ¶ 26. Plaintiff was confined in the SCI-Coal Twp. RHU on September, 2010 during the holy fast day of Gedaliah.[1] SCI-Coal Twp. prisoners observing the Gedaliah related fasting are normally provided with a Kosher bag meal. The initial claim raised in the Complaint contends that Wilson was improperly denied his Kosher bag meal on Gedaliah by correctional officials (Defendants Bendas, Folk, and Burns) due to his earlier placement on a modified food loaf meal restriction.[2]

Wilson concludes that the denial of his religious fast meal both violated his First Amendment right to exercise his religious beliefs and constituted cruel and unusual punishment under the Eighth Amendment. It is further asserted that the denial of the religious meal was undertaken pursuant to a policy, practice, or custom created by Superintendent Varano. <u>See</u> <u>id</u>. at ¶ 43. Plaintiff also claims that an administrative grievance which he filed regarding the purported deprivation was not properly handled.

The Complaint next maintains that as a result of the December 2010 removal of cell light switches from certain RHU cells

---

1. Plaintiff explains that during Gedaliah there is a a sixteen (16) hour fast which in this case lasted from sunrise September 12, 2010 to sundown that same day.

2. The Complaint indicates that the meal restriction was imposed because Wilson failed to return a food tray. Food loaf "is made up of the three meals of the day into a blend." <u>Id</u>. at ¶ 31.

ordered by Superintendent Varano, every day prisoners confined in those cells are subjected to sixteen (16) hours of bright constant illumination from a double candle fluorescent light.[3]  In addition, even when that light is dimmed, a single red dim candle fluorescent light remains on in those RHU cells twenty-four (24) hours a day. Wilson alleges that this constant illumination during the course of his extended confinement (13 months) in the RHU caused him to develop constant headaches, eye pain, mental stress, and depression and constituted cruel and unusual punishment.  See id. at ¶ 55.  It is specifically alleged that Plaintiff suffered blackouts on March 23, 2011, April 7, 2011 and October 24, 2011.

The final claims raised in the Complaint contends that Defendants acted improperly by ignoring Plaintiff's serious medical needs.[4]  In addition, Health Care Administrator McCarty acted improperly by establishing a practice that required prisoners, including Wilson, to pay for copies of their own sick call slips. A supplement filed by Plaintiff indicates that he is seeking injunctive and declaratory relief as well as punitive and compensatory damages.  See Doc. 9.

---

3.  Plaintiff indicates that light switches from one of the four RHU housing units were not removed.

4.  However, McCarty is the only health care employee named as a Defendant.  Moreover, none of the Corrections Defendants is described as having actually been involved in Plaintiff's medical care.  See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993)(a non-physician defendant can not be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff).

Presently pending is a motion to dismiss the Complaint filed by the Corrections Defendants. See Doc. 38. The opposed motion is ripe for consideration.

## Discussion

Corrections Defendants claim entitlement to entry of dismissal on the grounds that: (1) the denial of a Kosher bag meal was appropriate because Wilson should not be disciplined less severely based upon his religious beliefs; (2) the use of RHU security lighting is a legitimate security measure and within acceptable constitutional parameters; and (3) multiple Defendants are entitled to dismissal on the basis of lack of personal involvement. The motion to dismiss also briefly maintains that Health Care Administrator McCarty is entitled to dismissal since it is only alleged that she denied requests by Wilson for copies of his sick call requests and that camcorder tape be preserved. See Doc. 40, p. 4 n. 4.

## Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).

A plaintiff must present facts that, if true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a)(stating that

4

the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action. Id. at 556. A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, ___ U.S. ___ , 129 S.Ct 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Iqbal, 129 S.Ct at 1949. Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief. See id. at 1950.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, at 555. The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action). Additionally, pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972).

**Personal Involvement**

Corrections Defendants argue in part that most of the named Defendants are not alleged to have been personally involved in any of the alleged constitutional misconduct and are therefore entitled to entry of dismissal. See Doc. 40, p. 13.

It is initially asserted that Secretary Wetzel, Regional Superintendent Klopotoski, and Chief Grievance Officer Varner of the DOC are not alleged to have had any direct involvement in the purported constitutional violations.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Civil rights claims brought cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of

6

> participation or actual knowledge and
> acquiescence, however, must be made with
> appropriate particularity.

Rode, 845 F.2d at 1207.

Prisoners also have no constitutionally protected right to a grievance procedure. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977)(Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")

While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance. See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure). Pursuant to those decisions, any attempt by Plaintiff to establish liability against any Corrections Defendants= based upon the handling of his administrative grievances or complaints does not support a constitutional claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply

7

with grievance procedure is not actionable).[5]

Secretary Wetzel, Regional Superintendent Klopotoski, and Chief Grievance Officer Varner are each clearly employed in supervisory capacities by the DOC. There are no allegations whatsoever which could support a claim that any of those officials were involved in the day to day operations at SCI-Coal Twp. or more importantly in the alleged constitutional deprivations suffered by Wilson at that correctional facility.

Based upon the standards announced in Rode, Wetzel, Klopotoski, and Varner are clearly entitled to entry of dismissal since it is apparent that Plaintiff is attempting to establish liability against them either on the basis of their respective supervisory capacities within the DOC or due to their handling of his grievance appeals. Dismissal will be entered in favor of Secretary Wetzel, Regional Superintendent Klopotoski, and Chief Grievance Officer Varner.

It is similarly asserted that Deputy Superintendent Ellett Deputy Superintendent Miller, and ex-Deputy Superintendent McMillan are also entitled to dismissal since the only allegations raised against those officials are based upon their denials of request slips filed by Plaintiff. See Doc. 40, p. 14. Clearly, Ellett Miller and McMillan held supervisory jobs at SCI-Coal Twp. during

---

5. Since Plaintiff enjoys no constitutional right to a grievance procedure, entry of summary judgment with respect to Count Ten of the Complaint (denial of due process) is also appropriate.
    Additionally, there is no indication that Plaintiff has satisfied his burden of alleging that he suffered any injury to a non-frivolous litigation effort as required under Lewis v. Casey, 518 U.S. 343, 351-54 (1996).

the relevant time period. A careful review of the Complaint shows that Plaintiff contends that those Defendants failed to address post-incident request slips which Plaintiff initiated regarding the denial of a Kosher religious fast meal and constant illumination in the RHU.

Once again, since the only apparent basis for liability asserted against Deputy Superintendents Miller and Ellett and ex-Deputy Superintendent McMillan is based upon their alleged non-responses to requests slips filed by Plaintiff, those three Defendants are likewise entitled to entry of dismissal under <u>Rode</u> and <u>Alexander</u>.

Corrections Defendants further contend that Defendants Burns and Bendas "were only messengers" who told Plaintiff that Lieutenant Folk had determined that the prisoner would not be afforded his Kosher meal bag, they are also entitled to entry of dismissal on the basis of lack of personal involvement. Doc. 40, p. 14.

Based upon a review of the Complaint, Plaintiff clearly alleges that it was Lieutenant Folk who made a determination that he should not receive his Kosher bag meal. <u>See</u> Doc. 1, ¶¶ 30, 33. Plaintiff acknowledges that he submitted a request for the Kosher meal bag to Bendas and the correctional officer forwarded that request to Lieutenant Folk in a timely manner. Bendas subsequently told Plaintiff that Folk had denied the prisoner's request for a Kosher meal bag due to the meal restriction.

It is further alleged that Wilson then asked Bendas to tell Folk that the prisoner wished to speak with him. The Complaint

acknowledges that Bendas likewise passed that request along to Folk in a timely fashion and thereafter advised Wilson of Folk's denial.

Based upon the facts asserted in the Complaint, there are no allegations which could support a claim that Bendas had personal involvement in any unconstitutional behavior. Bendas' mere involvement as an intermediary between Wilson and Folk is insufficient to establish involvement in the alleged unconstitutional action undertaken by Folk. Accordingly, Defendant Bendas' request for entry of dismissal on the grounds of lack of personal involvement will be granted.

However, with respect to Defendant Burns, it is alleged that said Defendant held the same rank as Lieutenant Folk and acquiesced in the decision that Wilson should not have been provided with a Kosher food bag during the same relevant time period. See Doc. 1, ¶¶ 37-40. The argument for dismissal for non-personal involvement will be denied with respect to Defendant Burns.

The remaining arguments for dismissal asserts that the only claims asserted against Grievance Coordinator Dascani, Unit Manager Major Miller, and Shift Commander Captain Madden are based upon their failure to take favorable action response to Plaintiff's complaints. See Doc. 40, p. 14.

According to the Complaint, Dascani failed to provide Plaintiff with a copy of the initial response to his Kosher food bag related grievance. See Doc. 1, ¶ 46. Plaintiff adds that Madden similarly failed to acknowledge or respond to his request slip which complained that he had not been provided with a copy of the initial grievance response. Wilson also seeks relief against

10

Miller based upon the substance of that Defendant's response to a grievance regarding Plaintiff's medical care. See id. at ¶ 70. Since it is apparent that the Complaint is attempting to establish liability against Grievance Coordinator Dascani, Unit Manager Major Miller, and Shift Commander Captain Madden solely on the basis of their respective handling of Wilson's grievances and administrative appeals, those three (3) Defendants are also entitled to entry of dismissal pursuant to the standards set forth in Rode and Alexander.

**Food**

It is undisputed that Plaintiff was placed on meal restriction for a violation of prison rules. Wilson acknowledges that he committed the disciplinary infraction (refusal to return a food tray) underlying the meal restriction sanction. The parties further agree that prisoners on meal restriction are served a modified food loaf which is a concoction made up of the three meals of the day being blended together. There is no claim by Plaintiff that he was placed on meal restriction status for an extended period of time.

Corrections Defendants argue that since the temporary imposition of a food loaf diet as punishment for institutional misconduct is not unconstitutional, said claim should be dismissed. See Doc. 40, p. 6.

The Fourteenth Amendment prohibits the states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In order to determine whether a due process violation has occurred, an initial determination must

11

be made that a protected liberty interest exists and, if so, the next step is to define what process is mandated to protect it. See Sandin v. Conner, 515 U.S. 472, 484 (1995). A protected liberty interest may be created by either the Due Process Clause itself or by state law. Id. Due process requirements apply only when the prison officials' actions impose "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. Conversely, there can be no due process violation where there is no protected liberty interest.

The Supreme Court in Sandin stated that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence. Sandin, 515 U.S. at 485. The Third Circuit Court of Appeals relying on the Sandin principles has found no merit in due process claims presented regarding short term institutional disciplinary custody placement. See Torres v. Fauver, 292 F.3d 141, 150-51 (3d Cir. 2002). is not atypical and unusually harsh compared to the ordinary circumstances contemplated by a prison sentence.

In order to state a viable Eighth Amendment claim, an inmate Plaintiff must allege that a condition of confinement is so reprehensible as to be deemed inhumane under contemporary standards or one that deprives an inmate of minimal civilized measure of the necessities of life. See Hudson v. McMillian, 503 U.S. 1, 8 (1992); Wilson v. Seiter, 501 U.S. 294, 298 (1991). An Eighth Amendment claim against a prison official must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a

sufficiently culpable state of mind."[6]  Farmer v. Brennan, 511 U.S.
825, 834 (1994).  In prison conditions cases, "that state of mind
is one of 'deliberate indifference' to inmate health or safety."
Id.

Only a substantial deprivation of food to a prisoner sets
forth a viable Eighth Amendment claim.  Warren v. Irvin, 985 F.
Supp. 350 (W.D. N.Y. 1997); Williams v. Berge, 2002 WL 32350026 *2
(W.D. Wis. 2002); Moss v. Ward, 450 F. Supp. 591, 596 (W.D. N.Y.
1978)(deprivation of one meal may not be cruel and unusual
punishment).  Moreover, placing a prisoner on a food loaf diet for
a limited period of time has likewise been found not to assert a
viable Eighth Amendment violation.  Lane v. Culp, 2007 WL 954101 *4
(W.D. Pa. March 28, 2007).

Based upon an application of the above standards, Wilson
has failed to sufficiently allege a due process claim that his
temporary placement on a food loaf diet, for misconduct which he
admits to having committed, constitutes an atypical and significant
hardship as required under Sandin.  Therefore, entry of dismissal
with respect to any due process claim being raised by Wilson is
appropriate.  Likewise, under Lane and the other decisions cited

---

6.    Under Farmer, deliberate indifference is a subjective
standard in that the prison official must actually have known or
been aware of the excessive risk to inmate safety.  Beers-Capitol
v. Whetzel, 256 F. 3d 120, 125 (3d Cir. 2001).  This requirement of
actual knowledge means that "the official must both be aware of
facts from which the inference could be drawn that a substantial
risk of serious harm exists, and he must also draw the inference."
Farmer, 511 U.S. at 837.

above, Wilson's temporary placement on a food loaf diet did not constitute cruel and unusual punishment.

In conclusion, entry of dismissal will be granted to the extent that Plaintiff attempts to assert either an Eighth or Fourteenth Amendment claim regarding his temporary, disciplinary placement on a food loaf diet.

## Religion

Plaintiff is also asserting that the food loaf restriction should have been temporarily lifted in order to accommodate his observation of the Gedaliah holy day. Wilson indicates that pursuant to prison policy, practice, or custom, a previously imposed disciplinary sanction is not set aside in order to accommodate a prisoner's exercise of religious beliefs.

Corrections Defendants seek dismissal of any claims asserted by Wilson under either the First Amendment or the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a)(RLUIPA). The brief supporting their motion to dismiss argues "that it cannot be said that a limited punishment of putting Plaintiff on a meal loaf diet forces him to either practice his religion or receive adequate nutrition." Doc. 40, pp. 8-9. They argue that Wilson was not allowed to avoid punishment for violating prison rules by "using the shield of his religion." Id. at p. 9.

It is well settled that the "government must avoid excessive interference with, or promotion of religion." VanOrden v. Perry, 125 S. Ct 2854, 2868 (2005)(Breyer, concurring). The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise

14

thereof; ..." U.S. CONST. amend. I. Prisoners must be afforded "reasonable opportunities" to exercise their religious freedom guaranteed by the First Amendment. Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972).

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; ..." U.S. Const. Amend. I. It is clear that inmates "do not forfeit all constitutional protections by reason of their conviction and confinement in prison." DeHart v. Horn, 227 F.3d 47, 50 (3d Coir. 2000) (quoting Bell v. Wolfish, 441 U.S. 441 U.S. 520, 545 (1979)). Prisoners, as is well recognized, must be afforded "reasonable opportunities" to exercise their religious freedom guaranteed by the First Amendment. Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972).

However, imprisonment necessarily results in restrictions on some constitutional rights, including the First Amendment's right to the free exercise of religion. Thornburgh v. Abbott, 490 U.S. 401, 407 (1989). An inmate plaintiff must establish that he had a sincerely held belief which was religious in nature before the First Amendment free exercise protections are deemed applicable. Wisconsin v. Yoder, 406 U.S. 205, 215-19 (1972); Africa v. Pennsylvania, 662 F.2d 1025, 1029-30 (3d Cir. 1981). A prisoner must likewise establish that a prison policy or official practice substantially burdened his exercise of those religious beliefs.

Similarly, in order to establish a viable RLUIPA claim, a prisoner must similarly show that he had a sincerely held religious belief and that a prison policy or official practice substantially

15

burdened his exercise of those religious beliefs.[7]  A substantial
burden is one where: (1) a prisoner is forced to choose between
following the precepts of his religion and forfeiting benefits
otherwise generally available to other inmates versus abandoning a
precept of his religion in order to receive a benefit; or (2) the
government puts substantial pressure on an adherent to
substantially modify his behavior and to violate his beliefs.
Gould v. Beard, 07 Civ. 0055, 2010 WL 845566 * 4-5 (W.D. Pa. Jan.
16, 2010).  Once a viable claim is asserted, the Government has the
burden of demonstrating the burden furthers a compelling
governmental interest and is the least restrictive means of doing
so.  See Washington v. Klem, 497 F.3d 272, 277-78 (3d Cir. 2007).
Gould v. Beard, 2010 WL 845566 *4-5 (W.D. Pa. 2010).

     Wilson  does not deny that he committed the disciplinary
infraction which led to his food loaf sanction.  There is also no
contention that the food loaf restriction was an unacceptable
sanction.  There is also no argument raised in the pending motion
that Wilson's religious beliefs were not sincere.

     With respect to the substantial burden issue, Plaintiff's
pending action does not challenge the constitutionality of any DOC
or prison regulation.  Wilson is also not asserting that he was

---

7.  The Court of Appeals for the Third Circuit has recognized "that
RLUIPA does not permit an action against defendants in their
individual capacities." Sharp v. Johnson, 669 F.3d 144, 153 (3d
Cir. 2012).  Moreover, sovereign immunity has not been waived with
respect to private claims for monetary damage under RLUIPA against
state officials in their official capacities.  See id.; Sossamon v.
Texas, ___ U.S. ___, 131 S.Ct. 1651, 1660 (2011).
     Consequently, Plaintiff's RILUPA claims for monetary damages
will be dismissed.

punished for his religious beliefs or for trying to exercise those beliefs. Rather, the Complaint claims that pursuant to an alleged prison policy or custom, his food loaf restriction disciplinary sanction was not temporarily set aside in order to accommodate his exercise of a legitimate religious belief.

As discussed by the Corrections Defendants' supporting brief, the United States Supreme Court has held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). In Turner, the Supreme Court developed four factors to consider in reaching a decision: (1) is the governmental objective underlying the regulation at issue legitimate and neutral; (2) does the prisoner have alternate means of exercising his rights which remain open to prison inmates; (3) what impact would accommodation of the asserted constitutional right have on the guards and other inmates; and (4) what available alternatives exist to the prison regulation. see also O'Lone v. Shabazz, 482 U.S. 342 (1987)(reiterating recognition of the Turner standards as being the applicable test for determining the constitutionality of prison regulations). This standard implies that courts evaluating such claims must undertake a balancing test between the prisoner's claims of constitutional infringement and the prison's need of internal order and security.

The present matter before this Court is a motion to dismiss not a summary judgment motion. As a result, this Court has not been presented with any facts by the Corrections Defendants

addressing the controlling _Turner_ standards.  Since Corrections

Defendants acknowledge that this claim must be analyzed under

_Turner_[8] and have not provided this Court with a factual record

showing that legitimate penological interests were being served by

the challenged DOC policy, the request for dismissal must be denied

as premature.  _See_ _Taylor v. Hayman_, 2011 WL 735449 * 11 (D.N.J.

2011).

Corrections Defendants may reassert their argument via a

properly supported summary judgment motion.  The claims that

Corrections Defendants Folk and Burns violated the First Amendment

and RLUIPA (only with respect to Wilson's request for injunctive

relief) by refusing Plaintiff's request to be provided with a

Kosher food bag will be allowed to proceed.

**Security Lighting**

As previously discussed, Plaintiff alleges that as a result

of the December 2010 removal of cell light switches from certain

individual RHU cells ordered by Superintendent Varano, he was

exposed to sixteen (16) hours of bright constant illumination from

a double candle fluorescent light throughout his prolonged RHU

confinement.  Moreover, even when that light is eventually dimmed,

a single red dim candle fluorescent light remains on twenty-four

(24) hours a day.  Wilson alleges that this constant illumination

during the course of his extended confinement (13 months) in the

RHU constituted cruel and unusual punishment.

---

8.  _See_ Doc. 40, p. 9.

Corrections Defendants contend that the use of 24 hour lighting in the RHU does not violate the Eighth Amendment because it is a legitimate security measure. See Doc. 40, p. 11.

Prison conditions may amount to cruel and unusual punishment if they cause "unquestioned and serious deprivations of basic human needs ... [that] deprive inmates of the minimal civilized measure of life's necessities." Tillman v. Lebanon County Correctional Facility, 221 F.3d 410 (3d Cir. 2000). In reviewing conditions of confinement claims, courts have stressed that the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" are critical to a finding of cruel and inhumane treatment. Moreover, the focus must be on the deprivation of a particular basic necessity. As explained in Wilson v. Seiter, 501 U.S. 294, 304-05 (1991):

> Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise - for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as 'overall conditions' can rise to the level of cruel and usual punishment when no specific deprivation of a single human need exists.

In addition to showing conditions that pose a risk of serious harm, the inmate must show that the prison official

19

responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." Id. at 298. A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known objectively serious risk to a prisoner's health or safety. See Farmer, 511 U.S. at 837; Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir. 2001). This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

It has been recognized that "continuous exposure to low wattage night time security lighting may be permissible based on legitimate security concerns." Sims v. Piazza, 2009 WL 3147800 *23 (M.D. Pa. Sept. 28, 2009)(Kosik, J.); King v. Frank, 371 F. Supp.2d 977, 984-85 (W.D. Wisc. 2005). Similarly, in Brown v. Martinez, 2007 WL 2225842 * 8 (M.D. Pa. July 31, 2007) it was concluded that the presence of a 15 watt security night light in a prisoner's cell was necessary for night time institutional security and thus did not give rise to a constitutional violation.

However, requiring inmates to live in constant illumination may under certain circumstances rise to the level of a constitutional violation. Bacon v. Minner, 229 Fed. Appx. 96, 100 (3d Cir. 2007). In Bacon, the Court of Appeals concluded that a claim that the main lights in a segregated housing unit which "were turned on between the hours of 8:30 am and 11:30 pm" as well as between "4:45 am and 7:00 am" did not rise to the level of a constitutional violation because the plaintiff did not allege that

20

he was subject to constant illumination or had suffered any significant medical problem due to the purportedly excessive illumination. The Court concluded that Inmate Bacon's claims "were not objectively serious to warrant constitutional protection." Id.

Unlike Bacon, the present Complaint claims that the purported excessive lighting caused Wilson to suffer lack of sleep; blackouts; depression; optical pain and problems including blurred vison, seeing red spots, shadows, and line rays; constant headaches; dizziness; and weight loss. Moreover, Plaintiff alleges that he was prescribed medications for his resulting conditions.

Given that this Court is required, when considering a motion to dismiss, to accept as true the allegations in the Complaint that constant illumination in the SCI-Coal Twp. caused Plaintiff to suffer multiple medical problems, the claim that lighting in the RHU violated Wison's rights under the Eighth Amendment is sufficient to withstand scrutiny under Rule 12(b)(6). See Erler v. Dominguez, 2011 WL 781528 * 6 (N.D. Ind. Feb. 28, 2011).

**Defendant McCarty**

As noted earlier, the motion to dismiss generally maintains that Health Care Administrator McCarty is entitled to dismissal since it is only alleged that she denied requests by Wilson for copies of his sick call requests and that a camcorder tape be preserved. See Doc. 40, p. 4 n. 4.

Based upon this Court's review of the Complaint there is no specific assertion that McCarty denied a request by Plaintiff to preserve videotape. Rather, there is only a vague contention that Defendant Varano told Plaintiff that the videotape taken of any

21

medical emergency is automatically saved but that Wilson did not have the right to request that videotape be preserved for his possible use in the future. See Doc. 1, ¶ 128. This vague allegation is clearly insufficient for purposes of setting forth a claim against either McCarty or Varano.

However, since the pending motion to dismiss does not specifically address the claim that Defendant McCarty acted improperly by establishing a practice that required prisoners including Wilson to pay for copies of their own sick call slips (Doc. 1, ¶ 80) said claim will proceed.

## Conclusion

The motion to dismiss will be granted in favor of Defendants Secretary Wetzel, Regional Superintendent Klopotoski, Chief Grievance Officer Varner; Deputy Superintendent Ellett, ex-Deputy Superintendent McMillan, Grievance Coordinator Discandi, Unit Manager Major Miller, Shift Commander Captain Madden, Deputy Superintendent Miller, and Correctional Officer T. Bendas on the basis of lack of personal involvement.

Entry of dismissal in favor of the Corrections Defendants is also appropriate with respect to: (1) Plaintiff's action to the extent that it attempts to asserts either an Eighth or Fourteenth Amendment claim regarding his temporary, disciplinary placement on a food loaf diet; (3) any request for monetary damages under RLUIPA; and (3) the alleged failure of Varano and McCarty to preserve videotape.

The following claims will proceed: (1) Defendants Folk and Burns violated the First Amendment and RLUIPA by refusing

22

Plaintiff's request to be provided with a Kosher food bag; (2) Health Care Administrator McCarty acted improperly by establishing a practice that required Wilson to pay for copies of his own sick call slips; and (3) Superintendent Varano initiated a policy which created constant illumination in the SCI-Coal Twp. RHU and caused Plaintiff to suffer multiple medical problems in violation of his rights under the Eighth Amendment. An appropriate Order will enter.

RICHARD P. CONABOY
United States District Judge

DATED: SEPTEMBER 9th , 2013