IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


LAWRENCE MARVIN WILSON,    :
    :
        Plaintiff    :
    :
      v.    :    CIVIL NO. 3:CV-12-516
    :
SECRETARY JOHN WETZEL, ET AL.,  :    (Judge Conaboy)
    :
        Defendants    :

---

## MEMORANDUM
## Background

This <u>pro</u> <u>se</u> civil rights action pursuant to 42 U.S.C. § 1983 was filed by Lawrence Marvin Wilson, an inmate presently confined at the Forest State Correctional Institution, Marienville, Pennsylvania (SCI-Forest).  Remaining Defendants are the following officials at Plaintiff's prior place of confinement, the State Correctional Institution, Coal Township, Pennsylvania (SCI-Coal Twp.): Superintendent Varano; Health Care Administrator Kathryn McCarty; Restricted Housing Unit (RHU) Lieutenants Norman Folk and George Burns (collectively referred to as the "Corrections Defendants").

By Memorandum and Order dated February 19, 2013, a motion to dismiss the Complaint filed by Defendant Jennifer Daya, P.A. was granted.  <u>See</u> Doc. 53. A September 9, 2013 Memorandum and Order partially granted Corrections Defendants' motion to dismiss.  <u>See</u> Doc. 61.  The claims against Defendants Secretary Wetzel, Regional Superintendent Klopotoski, Chief Grievance Officer Varner; Deputy

1

Superintendents Ellett and Miller; ex-Deputy Superintendent McMillan, Grievance Coordinator Discandi, Unit Manager Major Miller, Shift Commander Captain Madden and Correctional Officer T. Bendas were dismissed on the basis of non-personal involvement. Dismissal was also granted with respect to any claims: (1) under either the Eighth or Fourteenth Amendment regarding Plaintiff's temporary, disciplinary placement on a food loaf diet; (3) for monetary damages under RLUIPA; and (3) concerning the alleged failure of Varano and McCarty to preserve videotape.

As a result, the following claims survive: (1) Defendants Folk and Burns violated the First Amendment by refusing Plaintiff's request to be provided with a Kosher food bag; (2) Health Care Administrator McCarty acted improperly by establishing a practice that required Wilson to pay for copies of his own sick call slips; and (3) Superintendent Varano initiated a policy which created constant illumination in the SCI-Coal Twp. RHU and caused Plaintiff to suffer multiple medical problems in violation of the inmate's rights under the Eighth Amendment.

Wilson describes himself as being "a faith believer and follower of the Hebrew-Israelite Culture/Religion." Doc. 1, ¶ 26. According to the Complaint, Plaintiff was confined in the SCI-Coal Twp. RHU on September, 2010 during the holy fast day of Gedaliah.[1] SCI-Coal Twp. prisoners observing the Gedaliah related fasting are normally provided with a Kosher bag meal. The initial claim raised

---

1.  During Gedaliah Plaintiff states that there is a sixteen (16) hour fast which lasted from sunrise September 12, 2010 to sundown that same day.

in the Complaint contends that Wilson was improperly denied his
Kosher bag meals on Gedaliah by Defendants Folk, and Burns due to
his earlier placement on a modified food loaf meal restriction.[2]
The denial of a religious fast meal allegedly violated Plaintiff's
First Amendment right to exercise his religious beliefs and also
constituted cruel and unusual punishment under the Eighth
Amendment.

The Complaint next maintains that as a result of the
December 2010 removal of cell light switches from certain RHU cells
ordered by Superintendent Varano, prisoners confined in those cells
are subjected to sixteen (16) hours of bright constant illumination
from a double candle fluorescent light.[3] When that light is dimmed
each a single red dim candle fluorescent light remains on in those
RHU cells for the remainder of the day.  Wilson alleges that this
constant daily illumination during the course of his extended
confinement (13 months) in the RHU caused him to develop constant
headaches, eye pain, mental stress, and depression and constituted
cruel and unusual punishment.  See id. at ¶ 55.  It is specifically
alleged that Plaintiff suffered blackouts on March 23, 2011, April
7, 2011 and October 24, 2011.

The final claims raised in the Complaint contends that
Health Care Administrator McCarty acted improperly by establishing
a practice that required prisoners, including Wilson, to pay for

---

2.  The Complaint indicates that the meal restriction was imposed
because Wilson failed to return a food tray.  Food loaf "is made up
of the three meals of the day into a blend."  Id. at ¶ 31.

3.  Plaintiff indicates that light switches from one of the four
RHU housing units were not removed.

3

copies of their own sick call slips.  A supplement filed by Plaintiff indicates that he is seeking injunctive and declaratory relief as well as punitive and compensatory damages.  <u>See</u> Doc. 9.

Presently pending is Corrections Defendants' motion for summary judgment.  <u>See</u> Doc. 88.  The opposed motion is ripe for consideration.

**Discussion**

**Standard of Review**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>See</u> <u>also</u> <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 231-32 (3d Cir. 2001).  A factual dispute is "material" if it might affect tl outcome of the suit under the applicable law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  <u>Id</u>. at 248.  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  <u>Saldana</u>, 260 F.3d at 232; <u>see</u> <u>also</u> <u>Reeder v. Sybron Transition Corp.</u>, 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts.  <u>Versarge v. Township of Clinton</u>, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-

4

moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

Corrections Defendants claim entitlement to entry of summary judgment on the grounds that: (1) the denial of a Kosher bag meal was appropriate because it was reasonably related to legitimate penological interests; (2) Defendant Varano is entitled to summary judgment; (3) there is no basis for a constituional claim against Health Care Administrator McCarty; (4) Plaintiff is not entitled to punitive damages; and (5) Remaining Defendants are entitled to qualified immunity. See Doc. 91, p. 2.

**Punitive Damages**

Corrections Defendants argue in part that the Complaint has

5

failed to make the requisite showing to warrant an award of punitive3 damages.  See Doc. 91, p. 25.

An award of punitive damages under § 1983 is appropriate when a defendant's conduct was shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.  Coleman v. Kaye, 87 F.3d 1491, 1497 (3d Cir. 1996); see also Smith v. Wade, 461 U.S. 30, 56 (1983). In Alexander v. Riga, 208 F.3d 419, 430 (3d Cir. 2000), the Court of Appeals for the Third Circuit reiterated the standard established in Smith and Coleman.  The Court in Alexander added that punitive damages may be awarded in a civil rights case where a jury finds a civil rights violation even if it has not awarded compensatory or nominal damages.

Pursuant to the Court's discussion, herein, Plaintiff has not sufficiently set forth a claim of reckless or callous indifference to his constitutional rights.  Accordingly, this Court agrees that there is no basis for an award of punitive damages.

**Bag Meal**

It is undisputed that Plaintiff was placed on meal restriction for a violation of prison rules.  Wilson acknowledges that he committed the disciplinary infraction (refusal to return a food tray) underlying the meal restriction sanction.  Prisoners on meal restriction are served a modified food loaf which is a concoction made up of the three meals of the day being blended together.

His Complaint alleges that Lieutenant Folk  made a determination that he should not receive Kosher bag meals (one at

6

the begining of the fast, the other at the end) for the holy fast day of Gedaliah due to the meal restriction.  See Doc. 1, ¶¶ 30, 33.  It is also asserted that Defendant Burns acquiesced in the decision that Wilson should not have been provided with a Kosher food bag.  See id., ¶¶ 37-40.  Wilson further explains that pursuant to prison policy, practice, or custom, a previously imposed disciplinary sanction is not set aside in order to accommodate a prisoner's exercise of religious beliefs. Plaintiff claims that the food loaf restriction should have been temporary lifted in order to accommodate his First Amendment right to observe the Gedaliah holy day.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; ..." U.S. Const. Amend. I.  The "government must avoid excessive interference with, or promotion of religion." VanOrden v. Perry, 125 S. Ct 2854, 2868 (2005)(Breyer, concurring). It is equally clear that inmates "do not forfeit all constitutional protections by reason of their conviction and confinement in prison." DeHart v. Horn, 227 F.3d 47, 50 (3d Coir. 2000) (quoting Bell v. Wolfish, 441 U.S. 441 U.S. 520, 545 (1979)).  Prisoners, as is well recognized, must be afforded "reasonable opportunities" to exercise their religious freedom guaranteed by the First Amendment. Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972).

This Court's September 9, 2013 Memorandum and Order concluded that the claims that Corrections Defendants Folk and Burns violated the First Amendment and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a)(RLUIPA)

7

(only with respect to Wilson's request for injunctive relief) by refusing Plaintiff's request to be provided with Kosher food bags should proceed.  Corrections Defendants' pending motion argues that the denial of Kosher bag meals did not violate the First Amendment because the reasons for the denial were reasonably related to a legitimate penological interest.[4]  See Doc. 91, p. 12.  Plaintiff counters that there is no difference between the food loaf and the Kosher bag meals because neither required the inmate being provided with eating utensils or containers.  See Doc. 105, p. 10.  As such, Wilson concludes that there was no legitimate penological objective for the denial of the Kosher meal bags.

Imprisonment necessarily results in restrictions on some constitutional rights, including the First Amendment's right to the free exercise of religion.  Thornburgh v. Abbott, 490 U.S. 401, 407 (1989).  An inmate plaintiff must establish that he had a sincerely held belief which was religious in nature before the First Amendment free exercise protections are deemed applicable. Wisconsin v. Yoder, 406 U.S. 205, 215-19 (1972); Africa v. Pennsylvania, 662 F.2d 1025, 1029-30 (3d Cir. 1981).  There is no valid argument raised in the pending motion that Wilson's religious beliefs were not sincere.  However, this Court agrees that Plaintiff knowingly being engaged in prison misconduct shortly before Gedaliah and as such willfully placed his ability to fully participate in its observance at risk.

---

4.  This Court previously determined that Wilson's temporary placement on a food loaf diet did not constitute cruel and unusual punishment.

8

Plaintiff must also establish that a prison policy or official practice substantially burdened his exercise of those religious beliefs. A prisoner in order to establish a viable RLUIPA claim, must similarly show that he had a sincerely held religious belief and that a prison policy or official practice substantially burdened his exercise of those religious beliefs. A substantial burden is one where: (1) a prisoner is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning a precept of his religion in order to receive a benefit; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs. Gould v. Beard, 07 Civ. 0055, 2010 WL 845566 * 4-5 (W.D. Pa. Jan. 16, 2010).  Once a viable claim is asserted, the Government has the burden of demonstrating the burden furthers a compelling governmental interest and is the least restrictive means of doing so.  See Washington v. Klem, 497 F.3d 272, 277-78 (3d Cir. 2007). Gould v. Beard, 2010 WL 845566 *4-5 (W.D. Pa. 2010).

With respect to the substantial burden issue, the Complaint claims that pursuant to an alleged prison policy or custom, the food loaf restriction disciplinary sanction was not temporarily set aside in order to accommodate Wilson's exercise of a legitimate religious belief.[5]  Corrections Defendants acknowledge that pursuant to prison policy inmates such as Wilson who are placed on

---

5.  Wilson does not asserting that he was punished for his religious beliefs or for trying to exercise those beliefs.

the food loaf restriction forfeit any religious accommodation that involves food, including religious fast bags.  <u>See</u> Doc. 91, p. 15.

The United States Supreme Court has held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987). In <u>Turner</u>, the Supreme Court developed four factors to consider in reaching a decision:  (1) is the governmental objective underlying the regulation at issue legitimate and neutral; (2) does the prisoner have alternate means of exercising his rights which remain open to prison inmates; (3) what impact would accommodation of the asserted constitutional right have on the guards and other inmates; and (4) what available alternatives exist to the prison regulation. <u>see also</u> <u>O'Lone v. Shabazz</u>, 482 U.S. 342 (1987)(reiterating recognition of the <u>Turner</u> standards as being the applicable test for determining the constitutionality of prison regulations).  This standard implies that courts evaluating such claims must undertake a balancing test between the prisoner's claims of constitutional infringement and the prison's need of internal order and security.

In support of their argument, Corrections Defendants have submitted a declaration under penalty of perjury by Reverend Ulrich Klemm.  <u>See</u> Doc. 90-2.  Rev. Klemm describes himself as being employed by the DOC as the Administrator for Religion and Volunteer Services and is an ordained Mennonite pastor.  Klemm states that prisoners with sincerely held Jewish beliefs, who are formally registered as Jewish and approved by the Jewish Chaplain can participate in the Fast of Gedaliah.  Those participants are given

a bag meal prior to the start of the fast and a supper bag meal at the conclusion of the fast.  However, pursuant to DOC policy, inmates such as Wilson who have been placed on the food loaf restriction forfeit any religious accommodation that involves food.

Klemm avers that inmates placed on the food loaf restriction "demonstrate a less than seriously held religious belief to warrant a religious accommodation." Id. at ¶ 18.  The Reverend adds that Wilson was still free to practice his religious beliefs through prayer and conducting religious rituals in his cell.  See id. at ¶ 19.  In addition, the Plaintiff could have counseling with staff chaplains, correspond with outside religious advisors, and obtain religious books and materials.  In addition, to Klemm's declaration, a copy of the DOC's written policy at issue has been provided.

A review of the policy shows that the challenged regulation was legitimate and neutral as it applied to all inmates regardless of their beliefs or non-beliefs.  Second it is equally apparent that the actions of Folk and Burns complied with that policy. Therefore, this is not a case whether the actions of correctional staff were contrary to established procedure.  This Court also agrees with the Corrections Defendants' contention that the policy furthered the safety and security of prison staff and inmates alike.  Specifically, to allow Wilson to have Kosher meal bags two days after he was placed on food loaf restriction for committing a serious infraction of prison rules would be unfair to other non-Jewish prisoners on the same food loaf restriction.  Moreover, it

11

would also allow prisoners the ability to escape punishment for violation of prison rules.

Corrections Defendants have also shown via Reverend Klemm's declaration that Plaintiff was provided with multiple alternative means of pursuing his religious beliefs including the ability to observe the Gedaliah religious feast without being provided with a Kosher meal.

Based upon a review of the factual record established by the Corrections Defendants, they have satisfied their burden of presenting factual evidence  showing that legitimate penological interests were being served by the challenged DOC policy as required by the controlling <u>Turner</u> standards.  Moreover, the implementation of the food restriction policy during the one day Gedaliah observance did not substantially burden Plaintiff's ability to exercise his religious beliefs  Accordingly, the request for entry of summary judgment with respect to Wilson's First Amendment claim will be granted.

**Security Lighting**

Plaintiff's Complaint next states that as a result of the December, 2010 removal of cell light switches from certain individual RHU cells ordered by Superintendent Varano, he was exposed to sixteen (16) hours (6 a.m.-10 p.m.) of bright constant illumination from a double candle fluorescent light throughout his prolonged RHU confinement.  When that light is eventually dimmed, a single red dim candle fluorescent light remains on (10 p.m.-6 a.m.).  Wilson alleges that this constant illumination during the course of his (13 month confinement in the RHU constituted cruel

12

and unusual punishment and caused him to suffer lack of sleep; blackouts; depression; optical pain and problems including blurred vison, seeing red spots, shadows, and line rays; constant headaches; dizziness; and weight loss. Moreover, Plaintiff alleges that he was prescribed medications for his resulting condition.

Corrections Defendants argue that they are entitled to entry of summary judgment because Plaintiff has not satisfied either the objective or subjective components required to set forth a valid Eighth Amendment claim. See Doc. 91, p. 17. They point out that the use of continuous lighting in prisons has been repeatedly found to be constitutionally permissible. While the Corrections Defendants acknowledge that Wilson was prescribed the sleeping aid medication Elavil, they note that the Plaintiff has not come forward with any competent evidence showing that his alleged injuries were caused by continuous lighting.[6]

In support of their argument, Corrections Defendants have submitted a declaration under penalty of perjury by SCI-Coal Twp. Deputy Superintendent for Facilities Maintenance Edward Baumbach. See Doc. 90-3. Baumbach acknowledges that between 6:00 a.m. and 9:50 p.m. each day all RHU cells are illuminated by two 28 watt fluorescent bulbs (day lights). According to the Deputy Superintendent between the hours of 9:50 p.m. to 6:00 a.m. the RHU cells are illuminated by a single 5 watt red bulb (night light). Baumbach further admits that light switches were removed form the inside of disciplinary custody housing unit cells in December 2010

---

6. Corrections defendants indicate that Wilson's problems were behavioral not medical. See Doc. 91, p. 21.

as a security and safety measure because those prisoners were able to make the inside of their cells completely dark.

Also submitted for consideration are Plaintiff's institutional grievance, disciplinary, and medical records. Those documents indicate that Plaintiff's allegations of suffering injury caused by constant illumination were evaluated by the prison's medical department and found to be baseless. See Doc, 90-1, pp. 45-57.

As previously discussed by this Court's September 9, 2013 Memorandum and Order, prison conditions may amount to cruel and unusual punishment if they cause "unquestioned and serious deprivations of basic human needs ... [that] deprive inmates of the minimal civilized measure of life's necessities." Tillman v. Lebanon County Correctional Facility, 221 F.3d 410 (3d Cir. 2000). Courts have stressed that the duration of a prisoner's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" are critical to a finding of cruel and inhumane treatment. Courts must focus on the deprivation of a particular basic necessity. The United States Supreme Court in Wilson v. Seiter, 501 U.S. 294, 304-05 (1991) provided the following explanation:

> Some conditions of confinement may
> establish an Eighth Amendment violation
> 'in combination' when each would not do so
> alone, but only when they have a mutually
> enforcing effect that produces the
> deprivation of a single, identifiable
> human need such as food, warmth, or
> exercise - for example, a low cell
> temperature at night combined with a
> failure to issue blankets. To say that
> some prison conditions may interact in

14

> this fashion is a far cry from saying that
> all prison conditions are a seamless web
> for Eighth Amendment purposes. Nothing so
> amorphous as 'overall conditions' can rise
> to the level of cruel and usual punishment
> when no specific deprivation of a single
> human need exists.

An inmate must additionally show that the prison official responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." Id. at 298.  A prison official only violates the Eighth Amendment if he acts with deliberate indifference to a known objectively serious risk to a prisoner's health or safety.  See Farmer, 511 U.S. at 837; Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir.  2001).  This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Our courts have repeatedly recognized that "continuous exposure to low wattage night time security lighting may be permissible based on legitimate security concerns." Sims v. Piazza, 2009 WL 3147800 *23  (M.D. Pa. Sept. 28, 2009)(Kosik, J.); King v. Frank, 371 F. Supp.2d 977, 984-85 (W.D. Wisc. 2005). Similarly, in Brown v. Martinez, 2007 WL 2225842 * 8  (M.D. Pa. July 31, 2007) it was concluded that the presence of a 15 watt security night light in a prisoner's cell  was necessary for night time institutional security and thus did not give rise to a constitutional violation.

15

However, requiring inmates to live in constant illumination may under certain circumstances rise to the level of a constitutional violation. <u>Bacon v. Minner</u>, 229 Fed. Appx. 96, 100 (3d Cir. 2007). In <u>Bacon</u>, the Court of Appeals concluded that a claim that the main lights in a segregated housing unit which "were turned on between the hours of 8:30 am and 11:30 pm" as well as between "4:45 am and 7:00 am" did not rise to the level of a constitutional violation because the plaintiff did not allege that he was subject to constant illumination or had suffered any significant medical problem due to the purportedly excessive illumination. The Court concluded that Inmate Bacon's claims "were not objectively serious to warrant constitutional protection." <u>Id</u>.

In the present case, Corrections Defendants have provided evidence showing that only a 5 watt night life was used and that it was employed for valid security and safety concerns. Additionally, the prison's medical staff evaluated Plaintiff but failed to find any relationship between the constant RHU illumination and his medical complaints. Moreover, Plaintiff has failed to come forth with any any competent medical evidence showing that he suffered any actual injury from the constant illumination in the SCI-Coal Twp. RHU. Based upon those considerations, and especially noting that the use of a 5 watt security night light has been found to be constitutionally permissible the request for entry of summary judgment will be granted.

**Defendant McCarty**

The motion to dismiss neglected to specifically address the claim that Health Care Administrator McCarty acted improperly by

16

establishing a practice that required prisoners including Wilson to pay for copies of their own sick call slips (Doc. 1, ¶ 80) . The pending summary judgment motion asserts that this allegation cannot proceed as McCarty's challenged policy did not deprive Plaintiff of a constitutional right.  See Doc. 91, p. 24.

It is initially noted that there is no contention that Plaintiff was deprived of any medical care or treatment due to his inability to pay for a copy of a sick call slip. As such, a viable claim of deliberate indifference to medical needs has not been raised against McCarty.

Second, it is well settled that prisoners have no right to free photocopying.  Johnson v. Moore, 948 F. 2d 517, 521 (9th Cir. 1991)("denial of free photocopying does not amount to a denial of access to the courts"); Harrell v. Keohane, 621 F. 2d 1059 (10th Cir. 1980); Jenkins v. Porfiro, Civil Action No. 3:CV-95-2048, slip op. at 1 (M.D. Pa. May 15, 1996) (Caputo, J.).  Second, it has also been held that there is no requirement that the government or a defendant has to pay for an indigent plaintiff's litigation efforts.  Smith v. Yarrow, 78 Fed. Appx. 529, 544 (6th Cir. 2003). Accordingly, regardless of whether Wilson was seeking free photocopies of his sick call slips for either his own personal benefit or in order to employ such documents with respect to a litigation effort, Defendant Mccarty was not constitutionally required to relieve Wilson of reasonable payment for the requested photocopying.  Defendant McCarty's request for entry of summary judgment will be granted.

## Conclusion

Plaintiff has not set forth a claim of callous or reckless indifference which would entitle him to an award of punitive damages. Second, The failure of prison officials to provide Wilson with Kosher bag meals during the one day Gedaliah fast did not rise to the level of a Fist Amendment violation. Next, the security lighting employed in the SCI-Coal Twp. RHU was not an unconstitutional condition of confinement and Plaintiff failed to provide any competent evidence showing that he suffered injury due to exposure to constant illumination.

Finally, Wilson was not entitled to be provided with free photocopies of his sick call slips for either his own personal benefit or in order to employ such documents with respect to a litigation effort. The summary judgment motion will be granted. An appropriate Order will enter.

RICHARD P. CONABOY
United States District Judge

DATED: JANUARY 23rd 2017